## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

**LINDA SIMS**                                            *
        **Plaintiff,**

                                  *

        **vs.**                                    *      **Docket No.**

**SUNOVION PHARMACEUTICALS,**      *
 **INC.,**
            **Defendant**                    *

## <u>COMPLAINT</u>

The Plaintiff, Linda Sims, as and for her Complaint, alleges that while she was employed by the Defendant, Sunovion Pharmaceuticals Inc., the Defendant wrongfully discriminated against her due to her race, sex, age, veteran status and disability, and unlawfully retaliated against her when she engaged in protected Equal Employment Opportunity Activity. Defendant's actions created a hostile working environment, and were so intolerable that they led to the Plaintiff's constructive discharge in violation of Federal and District of Columbia Law.

Plaintiff also alleges that she is owed for overtime wages by Defendant due to Defendant's failure to pay her overtime wages, despite the fact that her work week routinely exceeded more than 40 hours per week, in violation of Federal Law.

## <u>PARTIES</u>

1.     Plaintiff Linda Sims is an African American Black female (BF) who was at least 40 years old during the times relevant to this complaint. Plaintiff is a veteran of the United States Army and was honorably discharged after being recognized with medals and a commendation for her service. Plaintiff was deployed during the Gulf war,

and thus served on active duty in the U.S. military during a war, or in a campaign or expedition for which a campaign badge was authorized under the laws administered by the Department of Defense.   Plaintiff worked as a specialty markets salesperson and an institutional salesperson for Defendant from May, 2006 until October 1, 2016. Her assigned territory included Maryland and Washington, DC.   As a result of Defendant's discriminatory and retaliatory treatment toward her, Plaintiff was diagnosed with the disability of stress, depression, anxiety, insomnia and related symptoms, and had to go on disability leave for three months in 2012.   This stress, depression, anxiety, insomnia and related symptoms lasted for over a year, and constituted a physical or mental impairment that substantially limited Plaintiff's major life activities, including her ability to work, sleep, eat, and interact with her family.

   2.  Defendant Sunovion Pharmaceuticals Inc. , formerly known as Sepracor, Inc, (Sunovion or Defendant) is a company organized under the laws of the State of Massachusetts and maintains its corporate headquarters at 84 Waterford Drive, Marlborough, Massachusetts 01752.   Sunovion is in the business of, among other things, developing, licensing and selling various pharmaceutical products.   Sunovion does business in Maryland and Washington, DC and with the federal government, and employs more than 20 employees for more than 20 weeks a year and therefore is subject to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq; the Age Discrimination in Employment Act, 29 U.S.C §§ 621-634; the Equal Pay Act, 29 U.S.C. § 206d,  the Americans with Disabilities Act, 42 USC § 12101 et seq., the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Section 4212 (VEVRAA), the Fair Labor Standards Act 29 U.S.C. § 201 et seq. and the District of Columbia Age

Discrimination Law and the D.C. Human Rights Act (DCHRA) DC Code §§ 2-1401 to 2-1411.06.

## JURISDICTION

3.    This is an action for discrimination based on Race, Sex, Age,  Disability, and Veteran status as well as retaliation and constructive discharge  in violation of  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq; the Age Discrimination in Employment Act, 29 U.S.C §§ 621-634; the Equal Pay Act, 29 U.S.C. § 206d;  the Americans with Disabilities Act, 42 USC § 12101 et seq. and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Section 4212 (VEVRAA).  The Plaintiff alleges that the Defendant's actions also violate the District of Columbia Age Discrimination Law and the D.C. Human Rights Act (DCHRA) DC Code §§ 2-1401 to 2-1411.06. As a Veteran and African American Black Woman over 40 years old suffering from the disability of stress, depression, anxiety, insomnia and related ailments, the Plaintiff belongs to a protected class for the purposes of Federal and the District of Columbia anti-discrimination law.  The Plaintiff timely filed charges with the United States Equal Employment Opportunity Commission (EEOC).   On August 21, 2017, the United States Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to sue. Plaintiff received the Notice of Right to Sue on or about September 4, 2017.

Further, the Plaintiff also alleges that the Defendant failed to pay her overtime wages despite the fact that her work week routinely exceeded more than 40 hours per week in her job with the Defendant, in violation of the Fair Labor Standards Act 29 U.S.C. § 201 et seq.

4.     Due to the federal questions involved in the consideration of the Plaintiff's claims under the above-stated laws, this Court has jurisdiction under 29 U.S.C. §1331. Moreover, this Court also has subject matter jurisdiction and diversity under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 and the parties reside in different states.  Additionally, the Defendant does business in the District of Columbia, and many of Plaintiff's duties are carried out in the District of Columbia.  Further, this Court has pendent jurisdiction of the Plaintiff's claims under the District of Columbia's prohibitions against discrimination.

5.     Venue is appropriate to this Court because some of the acts outlined herein occurred in the District of Columbia and because Sunovion conducts business within District of Columbia.

## FACTS

6.     Plaintiff began working for Sunovion in May, 2006.  At all times relevant to this complaint, she was the only African American Black Woman working as a sales person within her designated geographical area of Washington, DC and Maryland. Plaintiff began her career with Sunovion as a pharmaceutical sales representative.  In 2007 she was promoted to Specialty Markets Sales Representative , and in 2008 she was promoted to  Institutional Sales Representative, the position which she held at the time she was constructively discharged in September 2016. Both promotions came with an increase in base pay and an increase in the opportunity to earn larger bonuses.

7.     As a sales representative for Sunovion Plaintiff was assigned responsibility for sales or promotions to medical professionals in certain defined territories including the District of Columbia and Maryland, and was expected to sell or

promote certain pharmaceuticals. Plaintiff had defined goals that she was expected to meet, and defined quotas that she was expected to achieve.

8.     From May, 2006 until 2009 the Defendant acknowledged that Plaintiff reached her employment goals and quotas, and she regularly received ratings of at expectations and exceeds expectations.  Plaintiff was recognized for her hard work, including the fact that in 2007 Plaintiff was named Sales Person of the Year and  received the Capitol Award for the Virginia Region.  In  2008 Plaintiff was inducted into the President's Circle as a result of her outstanding sales performance, and she was recognized/rewarded with a trip to Italy due to her outstanding sales performance.

9.     However in 2009 Plaintiff's supervisor became Livia Warden, a white female (WF).   Ms. Warden was aware of Plaintiff's age, sex, race and veteran status, and she immediately began to find fault with the Plaintiff's performance.  Even though Plaintiff's sales and quotas continued to reach and exceed her goals and quotas, Ms. Warden continued to single Plaintiff out and subject her to discriminatory and harassing behavior.  Ms. Warden did not treat any of the other younger, non-black male or non-black female sales representatives this way.

10.     Ms. Warden's discriminatory, disparate and harassing treatment of Plaintiff created a hostile work environment for the Plaintiff, and caused the Plaintiff to suffer from stress, depression, insomnia, anxiety, and related ailments.  As an example, after Ms. Warden became Plaintiff's supervisor she refused to approve the Plaintiff's requests for overnight lodging for Plaintiff's travel to visit her clients on Maryland's Eastern Shore, even though the distance was over 3.5 hours from Plaintiff's home and even though it is the policy of Sunovion to approve overnight lodging for  travel by sales

representatives to visit clients located more than 2 hours from their homes.   Ms. Warden told the Plaintiff words to the affect of " You need not submit an expense item for lodging during the Spring, Summer or Fall.  I will not approve lodging for  you.  I will only approve lodging for your trips to the Eastern Shore during the Winter Months." This created a hostile work environment and negatively impacted Plaintiff's ability to perform her job and progress in her career as a result of the severe physical and mental stress and strain from the constant travel and lack of sleep.    This is because in order to meet with her clients during regular business hours of 9 to 5pm, Plaintiff would have to leave her home before 6am and return after 7pm, and have to make the same trip again the very next day, resulting in back-to-back days over 12 hours long.  Ms. Warden did not treat the younger non-black male and female sales representatives who were not veterans this way—she regularly approved their lodging requests that involved travel of 2 hours or more per the company policy.

11.     Another example of discriminatory, harassing and also assaultive behavior occurred approximately late Fall 2011 during a regional meeting in Philadelphia Pennsylvania with other colleagues around.  Ms. Warden was well aware that the Plaintiff did not drink alcoholic beverages.  At this meeting, which occurred in the evening hours after the standard 9 to 5pm work day, Ms. Warden was unusually attentive to the Plaintiff and asked her several times whether Ms. Warden could get a beverage for the Plaintiff.  Plaintiff finally told Ms. Warden that she could bring her a virgin Madras— a non-alcoholic beverage consisting of orange juice, and cranberry juice mixed together. Ms. Warden brought Plaintiff a beverage that looked like the Madras drink, watched and waited anxiously until Plaintiff began to drink it, and stared at Plaintiff while she drank.

Plaintiff realized that the drink contained some sort of alcohol and stopped drinking it.

Plaintiff confronted Ms. Warden about the fact that the beverage contained alcohol and

Ms. Warden did not deny or express surprise, mistake or contrition at having brought

Plaintiff an alcoholic beverage, even though she was aware that Plaintiff had not

requested an alcoholic beverage and did not drink.  Instead, Ms. Warden dismissed the

Plaintiff and her concerns, stating words to the effect of "it's not that much in it!" "it

won't hurt you" and "we want to see you drunk!" Then Ms. Warden walked away as if

she were disgusted. This reprehensible, harassing and dangerous behavior created a

hostile work environment and it is an assault.  It is particularly concerning because Ms.

Warden did not know or care whether Plaintiff's objection to alcohol was based on health

reasons, allergies, medication contraindications, religious reasons or something else.  Ms.

Warden did not treat younger, non-veteran non-Black male and female sales

representatives this way, she did not put unknown additives in beverages of younger non-

veteran non-Black male and female sales representatives, nor did she attempt to get them

"drunk," try to subject them to ridicule  during meetings or in front of their peers or

attempt to harm them in this manner.  This behavior upset Plaintiff, and seriously

interfered with her ability to do her work-related functions and interact with her

colleagues during this meeting and afterwards, and made her feel stressed, anxious,

depressed, embarrassed, harassed and afraid that her food and beverages at work

occasions were subject to interference by Ms. Warden or Defendant's other supervisory

level employees.

       12.    Ms. Warden also withheld information from Plaintiff that Ms. Warden had

sole access to, even though Plaintiff needed the information to perform her job, and

belittled and ignored Plaintiff's accomplishments, even though in 2011 Plaintiff had been ranked first (1st) in the area and fourth (4th) in the nation for sales of certain pharmaceuticals.  Ms. Warden also subtracted locations from Plaintiff's territory wherein Plaintiff would excel and thrive, and gave the locations to younger non-black male and female representatives who were not veterans and who were not meeting their quotas and sales goals.  These actions created a hostile work environment and caused Plaintiff to lose pay and not meet her sales goals and quotas.  These actions also adversely affected Plaintiff's rankings within the company and reduced her opportunities to win money, trips, and other achievement incentives, and thus adversely affected her compensation. Ms. Warden did not treat younger non-Black male and female representatives who were not veterans this way: she did not withhold information from them or subtract well-performing territories from younger non-Black male and female sales representatives who were not veterans and give them to others in ways that would adversely affect their quotas and sales goals and compensation and she did not assist Plaintiff to increase her goals and quotas by giving Plaintiff well-performing territories taken from other younger, non-Black male and female non-veteran sales representatives' territories.

13.    Plaintiff contacted Sunovion's Human Resources Department in late 2011/early 2012 to complain of the hostile work environment and Ms. Warden's disparate and discriminatory treatment.  The Human Resource Department was aware of Plaintiff's race, sex, age and veteran status.  However, the only response Plaintiff received from Human Resources was a snide comment from  a white female (WF) Human Resources Officer (name unknown at this time), who responded to her complaint with words to the effect of "are you finally glad that you told? Is that good enough for

you?"  This sarcastic comment was the only response Plaintiff received from the Human

Resources Department, and this led Plaintiff to believe that Sunovion's management

condoned Ms. Warden's actions and did not seriously regard Plaintiff's concerns.

Plaintiff also reported the hostile work environment and Ms. Warden's disparate and

discriminatory treatment toward her to Defendant's Ethics and Compliance Division

through the office computer portal (the method Defendant established for such reports)

in a manner that also included her race, sex, age and veteran status.  Plaintiff received no

assistance from them either.

14.     Ms. Warden engaged in many other discriminatory and disparate actions

toward Plaintiff.  These pervasive actions coupled with Ms. Warden's assaultive behavior

such that Plaintiff did not know whether she could safely set down a glass or beverage,

created a hostile work environment for Plaintiff and adversely affected her compensation

and her ability to do her job, interact with her colleagues, and take advantage of

incentives and promotional opportunities.  Plaintiff's complaints to the Human Resources

and Ethics and Complaint Departments went unheeded.  This caused Plaintiff so much

stress, depression, insomnia, anxiety and related ailments that Plaintiff did not feel safe at

work and could not perform her duties, and was forced to go on disability leave for three

months—February, March, and April of 2012.

15.     Shortly after she returned in Spring of 2012 Plaintiff filed an EEOC

complaint regarding the disparate, harassing, discriminatory and assaultive behavior she

experienced from Ms. Warden.  After Plaintiff filed the EEOC complaint, Ms. Warden

was removed as her supervisor and transferred to another section of Sunovion, in another

state, away from the Plaintiff.  There was no indication that Ms. Warden's transfer was a

result of Plaintiff's complaint.  Nevertheless, as Ms. Warden was no longer her supervisor, Plaintiff did not pursue the EEOC complaint further at that time.

16.     After Ms. Warden's removal as her supervisor, Plaintiff again began to receive good evaluations, exceed expectations, and receive incentives for her work performance.  For example, Plaintiff won Most Valuable Person in the Charlotte Region in 2015.  However, in January, 2016, Jennifer Russell (WF) became Plaintiff's supervisor.   Ms. Russell was aware of Plaintiff's race, sex, age, veteran status and disability.  In fact, shortly after Ms. Russell was hired she questioned Plaintiff about the fact that Plaintiff had not certified in the company employee computer portal (Workday) whether she had a disability.  Plaintiff learned that there was a connection between Ms. Russell, her new supervisor, and Ms. Warden, her old supervisor, and that Ms. Russell was being mentored by Ms. Warden.  Ms. Russell was aware that Plaintiff had filed an EEOC complaint against her mentor, Ms. Warden. Additionally, at a meeting during the Summer of 2016 the Head of Sales, Chuck Rodgers (WM), in an attempt to harass and embarrass Plaintiff, asked Plaintiff whether she obtained medical care elsewhere, such as the Veteran's Administration.

17.     Ms. Russell immediately began to harass and discriminate against the Plaintiff due to her race, sex, age, veteran status and disability.  Ms. Russell also immediately began to retaliate against the Plaintiff for engaging in protected EEOC activity and filing an EEOC complaint against her mentor, Ms. Warden.  For example, despite the Plaintiff's achievement of similar sales performance, goals, and quotas during the first quarter of 2016, Ms. Russell put her on a Performance Improvement Plan (PIP) and told her that she needed to change her goals to reflect a "Developmental Plan" even

though by then she had been with the company for 10 years and her previous review was meets expectations.  However, none of the other younger, non-black male or female sales representatives without disabilities who were not veterans and had not engaged in EEOC activity were put on a PIP or told to create a Developmental Plan, including one younger, non-veteran white male who had not made his quota for an entire year and  a younger, non-veteran non-black female who had not made her quota for two consecutive years. Additionally, none of the other sales representatives had ever filed EEOC actions against Sunovion.  Plaintiff was the only Black female, the oldest female, the only veteran and the only one who had engaged in EEOC activity, and as a result, she was the only one who had been put on a PIP.  Additionally, Ms. Russell and Human Resources (WF) subjected Plaintiff to the  monitoring of her emails and computer activity, yet none of the other younger non-black male or females who were not veterans were subject to same. The only other person so subjected was a black male.  Ms. Russell also attempted to improperly monitor Plaintiff's off-duty computer activity by attempting to use social media to gain access to Kimberly Titus (WF) (a former Sunovion employee who did not know Ms. Russell) after  Ms. Russell learned that Plaintiff and Ms. Titus had collaborated. Ms. Russell did not attempt to monitor the off-duty computer activity of the other younger non-black male or females who were not veterans, disabled, or participants in EEOC activity in this way.  Ms. Russell also subtracted locations from Plaintiff's territory wherein Plaintiff would excel and thrive, and gave the locations to younger non-black male and female representatives who were not veterans, , disabled, or participants in EEOC activity, and who were not meeting their quotas and sales goals.  Ms. Russell also engaged in many other discriminatory and disparate actions toward the Plaintiff.

These actions created a hostile work environment and caused Plaintiff to lose pay and not meet her sales goals and quotas.  These actions also adversely affected Plaintiff's rankings within the company, and reduced her opportunities to win money, trips, and other achievement incentives, and thus adversely affected her compensation.  Ms. Russell did not treat younger non-Black male and female representatives who were not veterans, disabled, or participants in EEOC activity this way: she did not withhold information from them or subtract well-performing territories from them and give them to others in ways that would adversely affect their quotas and sales goals and compensation and she did not assist Plaintiff to increase her goals and quotas by giving Plaintiff well-performing territories from other younger, non-Black male and female non-veteran  sales representatives' territories.

18.     As another example, in March, 2016, Ms. Russell presided over a meeting that included approximately 12 other sales representatives. The only African American Black people at the meeting were Plaintiff and a Black male sales representative. Plaintiff was the only veteran African American Black woman, over 40, with a disability, and who had participated in EEOC activity.  At the meeting, Ms. Russell gave the participants keys with designs that she said described their personalities and/or her impression of them.  Ms. Russell gave Plaintiff a pink key with a diamond-like stone and the word Diva.  The word Diva is often used in a derogatory way to describe a Black woman who is self absorbed and difficult to deal with.  Ms. Russell gave the Black male sales representative (who is an elite salesperson and who happens to be short in stature) a key with an M & M candy and stated words to the effect of "this is because he likes to eat."  When Ms. Russell introduced the Black male sales representative to begin his

presentation, she used a powerpoint slide with a picture of a dancing leprechaun.  This action produced a shocked reaction from the other representatives in the room,  and the Black male representative to whom it was directed stated words to the effect of  "I'm offended—why do I have to be the short dancing person?"  Ms. Russell's response was to huff and act disgusted and to minimize the Black male representative's offense.  The stereotype that Black people like to eat and dance is often applied to Black people in a derogatory way to diminish their professional and intellectual accomplishments and imply that they are not to be taken seriously.  All of the other participants (younger, non-Black males and females) received a regular introduction with no caricatures or derogatory images.  Additionally, Ms. Russell did not  give any of the non-Black male or female representatives keys that represented derogatory stereotypes.  In fact, Ms. Russell gave a white male at the meeting a key with an American flag, stating words to the effect that "this is because you look like the All American man."

19.     At the same meeting during the Summer of 2016 wherein Chuck Rodgers, Head of Sales (WM) made comments to demean, harass, and embarrass Plaintiff about her disability and her status as a veteran, Plaintiff was the only veteran, the only African American Black female sales representative, the only person with a disability and the only person who had engaged in EEOC activity.  There was only one other African American sales representative—a Black male.  Sunovion's bonus system was discussed at this meeting, and Plaintiff noted that she and the Black male were differently situated from the younger non-Black male and female sales representatives who were not veterans, who did not have disabilities and who had not engaged in EEOC activity in terms of their opportunity to qualify for and compete for bonuses.  Specifically, when a

representative's sales reach a certain level, the sales representative gets the benefit of a "kicker" to exponentially increase his or her goals and push him or her up higher in rating and rankings thus increasing his or her opportunity to qualify and  the size of his or her bonus.  For Plaintiff (BF) and the other African American Black male (BM) in the company, that level was 110 %.  However, younger, non-Black male or females who were not veterans, who did not have disabilities and who did not file with EEOC only had to hit a level of 100% before receiving the benefit of the "kicker."  Younger white male and female representatives who were not veterans, did not have disabilities or EEOC activity who have performed poorly in the company have had their territories adjusted in a way that causes them to receive the benefit of the "kicker" sooner.  However, Plaintiff (the only older black female, veteran and the only person who has a disability and who has engaged in  EEOC activity) and the Black male representative did not get this opportunity or adjustment, and in fact, had their territory adjusted in a way that benefited the others.  This negatively affected the way the Plaintiff and the other Black male are ranked against the younger non-black male or females without disabilities who were not veterans and did not file with EEOC, and thus adversely affects their rate of pay and opportunity for advancement, compensation and other incentives.  At the meeting Plaintiff asked a question about the bonus situation, and Chuck Rodgers, Head of Sales (WM) and Chris Gish, Vice President of Sales (WM) made it clear that some people would be affected positively by the bonus situation and some people would be affected negatively, but that was "just the way it is."  Plaintiff (BF) and the Black male were the only people who were affected negatively by the bonus situation. Plaintiff felt that these two upper management level people who were in a position to set the policy with regard

to sales were explaining that the policies of the company do in fact impact negatively on her and the Black male, and that there was nothing that anyone was going to do about it—a tacit acknowledgment of existence of the hostile work environment that would and did impact negatively on their compensation, advancement, and work.

20.     After Ms. Russell learned that Plaintiff had engaged in protected EEOC activity, Plaintiff did not receive accolades, praise, recognition or acknowledgment in her evaluation or when placing her on the PIP, even though she was singled out for her stellar work by two different specialty markets divisions within Sunovion.  She was not allowed to compete for promotions, even though a younger non-Black female who had no disability or EEOC activity, and who had less experience and had not filled her quota for two consecutive years was promoted.  Plaintiff attempted to reach out to senior level executives for guidance and mentoring, but was chastised by Ms. Russell and other senior level executives for doing so.  None of the other younger non-veteran, non-black male or females without disabilities or EEOC activity were treated this way.

21.     On June 21, 2017, the day before Plaintiff's performance review, while Plaintiff was driving with Ms. Russell to a hotel, Ms. Russell told Plaintiff she was "un-coachable and the worst person she had ever coached in her entire history of coaching." When pressed for details Ms. Russell proffered no explanation or concrete examples that caused her to form such a damaging conclusion.  Then, in an attempt to sabotage the Plaintiff and create a situation to get Plaintiff fired, Ms. Russell demanded that Plaintiff check to see whether she had gotten a text message that Ms. Russell sent, even though Plaintiff was driving a company car at the time and Ms. Russell knew that a sales representative could be fired for texting or looking at text messages while driving a

company car.  The following day, Ms. Russell and Mr. Russell's supervisor Wolfgang

Freund (WM) informed Plaintiff that her performance review was "Partially Meets

Performance,"  that she did not meet corporate standards, and that she had 60 days to

improve.  Even though Plaintiff learned that the Business Plan that she had prepared had

been used by company personnel to teach executives at a managers meeting, Ms. Russell

and Mr. Freund  directed her to write a document suggesting that she was un-coachable to

support the development plan.  Throughout the meeting Ms. Russell and Mr. Freund

nudged each other and exchanged glances while making negative comments about the

Plaintiff.  Ms. Russell did not include Plaintiff's comments or examples regarding her

work in the Official Performance Review document.  When Plaintiff inquired, Ms.

Russell said words to the effect of "It is too late to do that and I can no longer do it so just

sign it and send it back.  It is what it is." However, Plaintiff knew from prior experience

that this was not the standard policy with regard to an employee's Official Performance

Review. This was an attempt to discriminate against Plaintiff, and to retaliate against

Plaintiff for engaging in protected EEOC activity, and to create a hostile, intolerable

environment that would result in Plaintiff's constructive discharge, by having Plaintiff

agree to and sign off on a statement that her performance was below par, and to ignore

any information to the contrary. Plaintiff's supervisors had decided that nothing that

Plaintiff could say or do would make a difference in her review, and that none of her

positive accolades or performance would be included in the Official Performance Review

document.  None of the other younger non-veteran, non-black male or females without

disabilities or EEOC activity were treated this way.

22.     In August 2016 Plaintiff contacted the Human Resources Department regarding her Performance Review and the disparate and discriminatory treatment from management.  Her first contact was with Ericka Ryan (WF) wherein Plaintiff left a message on her voicemail because she was on vacation.  Plaintiff called again and was referred to Ms. Rebecca (WF) and left a voicemail for her.  Neither of them ever returned Plaintiff's call.  In late August Plaintiff spoke with Leslie Bateman (WF) who immediately stated that Ms. Ryan was not available, that she was told to help Plaintiff, and that she was going on vacation but would call Plaintiff by August 31, 2016.  However, Ms. Bateman never called back, and only spoke with Plaintiff when she was included in a conference call between Plaintiff and Ms. Russell on September 16, 2016.  In response to Plaintiff's query as to why Ms. Bateman had not called back as she had promised, Ms. Bateman said she had no notes that either she or Ericka Ryan were supposed to call Plaintiff back.  When Plaintiff informed Ms. Bateman about her concerns about the disparate treatment she received from Ms. Russell and Mr. Freund, about the fact that Ms. Russell would send her emails that were not consistent with what they had discussed, and that her work environment was hostile, intolerable and unbearable due to the treatment she received from Defendant's management, Ms. Bateman became very animated at the use of the phrase "hostile work environment and tried to end the call.  Ms. Bateman attempted to belittle Plaintiff and minimize her complaint by remarking in an incredulous tone that Plaintiff was an experienced sales professional yet asked for help doing her job, and that she (Ms. Bateman) didn't need anyone to tell her how to do her job.  After getting no assistance or acknowledgment regarding her concerns as a result of this telephone conversation and Human Resources

Department intervention, Plaintiff realized that her supervisors were determined to continue to discriminate and retaliate against her and force her to quit her job. Plaintiff realized that her sales territories would continue to be diminished, she would have to do more to get the exponential bonus ranking benefits, she would not be allowed to develop mentoring relationships with senior executives, and her positive accomplishments or any positive observations would not be reflected in her Official Performance Review document. Successful access to all of these opportunities is crucial to being a successful employee at Sunovion. None of the other younger non-black male or female representatives who were not veterans, not disabled and who had not engaged in EEOC activity were treated in this way. As a result of Defendant's actions and decisions toward Plaintiff including disparate, negative, embarrassing, harmful and harassing treatment, lack of access to opportunities and avenues for success, and inadequate response to her complaints, the resulting hostile working environment led to the Plaintiff's constructive discharge in violation of Federal and District of Columbia Law, and Plaintiff submitted her resignation on or about September 19, 2016, effective October 1, 2016.

23. Plaintiff's work week routinely exceeded more than 40 hours per week during the 10 years that she worked for the Defendant, and she routinely worked 50 to 60 hours during the week in her job, however, Defendant failed to pay her overtime wages.

24. Plaintiff is in a protected class due to her race (African American Black), Sex (female), Age (over 40) Disability (stress, depression, anxiety, insomnia, and related symptoms and conditions) and status as a veteran, and her engagement in protected EEOC activity.

25.     Defendant knew or should have known about its management and supervisors' discriminatory, negative, disparate and harassing  actions towards the Plaintiff, and failed to take reasonable and effective steps to protect her.

### Count 1 – Racial Discrimination in violation of Title VII
### of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

26.     The allegations contained in Paragraphs 1 – 25 are hereby incorporated by reference as though stated in full herein.

27.     At all material times Plaintiff was an employee and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

28.     Defendant discriminated against Plaintiff by means of the actions described above based on her race as an African American Black woman, and subjected her to disparate, negative and harassing treatment. Employees and sales representatives who were not Black African Americans were not treated this way.

29.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury, damages, stress, depression, insomnia, anxiety and related ailments, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

30.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 2 – Sexual Discrimination in violation of Title VII of the**

**Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**

31.     The allegations contained in Paragraphs 1 – 30 are hereby incorporated by reference as though stated in full herein.

32.     Defendant discriminated against Plaintiff by means of the actions described above based on her sex as an African American Black woman, and subjected her to disparate, negative and harassing treatment. Employees and sales representatives who were not female were not treated this way.

33.     As a result of this discriminatory treatment, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury, damages, stress, depression, insomnia, anxiety and related ailments, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so. and continues to do so.

34.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 3 – Age Discrimination in violation of the**

**Age Discrimination in Employment Act, 29 U.S.C §§ 621-634**

35.     The allegations contained in Paragraphs 1 – 34 are hereby incorporated by reference as though stated in full herein.

36.     Defendant discriminated against Plaintiff by means of the actions stated above based on her age, and her age was a factor that made a difference in Defendant's decisions toward her and subjected her to disparate, negative and harassing treatment.

Employees and sales representatives who were not as old as Plaintiff were not treated this way.

37.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury damages, stress, anxiety and related ailments, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

38.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 4 – Discrimination based on Veteran Status  in violation**

**Of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Section 4212.**

**(VEVRAA)**

39.     The allegations contained in Paragraphs 1 – 38 are hereby incorporated by reference as though stated in full herein.

40.     Defendant discriminated against Plaintiff by means of the actions stated above based on her veteran status, and her veteran status was a factor that made a difference in Defendant's decisions toward her and subjected her to disparate, negative and harassing treatment. Other employees and sales representatives who were not veterans were not treated this way.

41.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury damages, stress, anxiety and related ailments,

mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

42.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

## Count 5 – Discrimination based on Disability

## in violation of the Americans with Disabilities Act, 42 USC § 12101 et seq.

43.     The allegations contained in Paragraphs 1 – 42 are hereby incorporated by reference as though stated in full herein.

44.     As a result of Defendant's discriminatory and retaliatory treatment toward her, Plaintiff was diagnosed with the disability of stress, depression, anxiety, insomnia and related symptoms, and had to go on disability leave for three months in 2012.   This disability lasted for over a year, and continues to impact Plaintiff and constitutes a physical or mental impairment that substantially limited Plaintiff's major life activities, including her ability to work, sleep, eat, and interact with her family.

45.     Defendant discriminated against Plaintiff by means of the actions stated above based on her disability and her disability was a factor that made a difference in Defendant's decisions toward her and subjected her to disparate, negative and harassing treatment. Other employees and sales representatives who were not suffering from disabilities as was Plaintiff were not treated this way.

46.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury damages, stress, anxiety and related ailments,

mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

47.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 6 – Retaliation for Engaging in Protected EEOC Activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**

48.     The allegations contained in Paragraphs 1 – 47 are hereby incorporated by reference as though stated in full herein.

49.     Defendant discriminated against Plaintiff by means of the actions stated above by retaliating against her for participating in protected EEOC activity and filing an EEOC complaint, and her participation in EEOC activity was a factor that made a difference in Defendant's decisions toward her and subjected her to disparate, negative and harassing treatment. Other employees and sales representatives who had not participated in EEOC activity were not treated this way.

50.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury damages, stress, anxiety and related ailments, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

51.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 7 – Discrimination and Creation of a Hostile Work Environment**

**and Constructive Discharge in violation of  Title VII of the Civil Rights Act of 1964,**

**42 U.S.C. § 2000e, et seq.**

52.     The allegations contained in Paragraphs 1 – 51 are hereby incorporated by reference as though stated in full herein.

53.     Defendant discriminated against Plaintiff by means of the actions stated above by creating a hostile work environment.  As a result of Defendant's actions and decisions toward her including disparate, negative and harassing treatment and inadequate response to Plaintiff's complaints,  Defendant's actions created a hostile working environment, and were so pervasive, intimidating and intolerable that they interfered with Plaintiff's compensation, ability to do her job, and opportunities for progress and promotion and led to the Plaintiff's constructive discharge in violation of Federal and District of Columbia Law. Other  employees and sales representatives who were not African American women suffering from a disability and who were not as old as the Plaintiff and who had not participated in EEOC activity were not treated this way.

54.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury damages, stress, anxiety and related ailments, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

55.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 8 – Discrimination based on Race, Sex, Age, Disability,**

**Veteran Status and Hostile Work Environment and Constructive Discharge in**

**Violation of  the District of Columbia Age Discrimination Law and the D.C. Human**

**Rights Act (DCHRA) DC Code §§ 2-1401 to 2-1411.06.**

56.     The allegations contained in Paragraphs 1 – 55 are hereby incorporated by reference as though stated in full herein.

57.     Defendant and its supervisors discriminated against Plaintiff as a result of her race, sex, age, disability, veteran status and created a hostile work environment in terms of  Defendant's decisions toward her and subjected her to disparate, negative and harassing treatment.  Defendant knew or should have known about its supervisors discriminatory, negative, disparate and harassing  actions towards the plaintiff, and failed to take reasonable and effective steps to protect her.  This treatment was so pervasive, severe and intolerable that Plaintiff was forced to resign, thus creating a constructive discharge.  Other younger employees and sales representatives who were not African American women and who had not participated in EEOC activity were not treated this way.

58.     As a direct result and proximate cause of Defendant's wrongful actions and omissions, Plaintiff has suffered loss of earnings, earning capacity, and fringe benefits, and has suffered personal injury damages, stress, anxiety and related ailments,

mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation and continues to do so.

59.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 9 – Failure to pay overtime wages in Violation of  the Fair Labor Standards Act 29 U.S.C. § 201 et seq.**

60.     The allegations contained in Paragraphs 1 – 59 are hereby incorporated by reference as though stated in full herein.

61.     Plaintiff's work week routinely exceeded more than 40 hours per week during the 10 years that she worked for the Defendant, and she routinely worked 50 to 60 hours during the week in her job, however, Defendant willfully failed to pay her overtime wages despite the fact that she was legally entitled to collect them.

62.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

**Count 10 – Failure to pay overtime wages in Violation of District of Columbia Law.**

63.     The allegations contained in Paragraphs 1 – 62 are hereby incorporated by reference as though stated in full herein.

64.     Plaintiff's work week routinely exceeded more than 40 hours per week during the 10 years that she worked for the Defendant, and she routinely worked 50 to 60

hours during the week in her job, however, Defendant willfully failed to pay her overtime wages despite the fact that she was legally entitled to collect them.

65.     These violations were carried out with malice and/or reckless indifference to Plaintiff's rights.  Accordingly, Plaintiff puts Defendant on notice that she requests punitive damages against Sunovion as echoed in the Wherefore Claim herein.

<b>Relief</b>

**WHEREFORE,** the Plaintiff demands judgment as follows:

1. Compensatory Damages  of Two Million Dollars ($2,000,000)

2. Front Pay

3. Back Pay

4. Punitive Damages

5. Costs and Interest

6. Attorney's Fees, expenses and costs

7. Overtime Pay

8. Such other relief as the Court deems just and proper.

<b>Demand for Jury Trial</b>

Plaintiff hereby makes a demand for trial by jury in this matter.

Respectfully Submitted,

__/s/_____
Wanda J. Dixon, Esq.
Attorney for Plaintiff Sims
9801 Apollo Drive Suite 6033
Largo, MD 20792-6033
wandajdixon.esq@gmail.com
301-452-7152