## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA SIMS,<br>     Plaintiff<br>     v.<br> SUNOVION PHARMACEUTICALS, INC.,<br>     Defendant | Civil Action No. 17-2519 (CKK) |

## MEMORANDUM OPINION
(February 19, 2019)

Plaintiff Linda Sims, a former salesperson for Defendant, Sunovion Pharmaceuticals, Inc., alleges various claims against Defendant for discrimination, retaliation, hostile work environment, constructive discharge, and overtime wage violations. In her wide-ranging Second Amended Complaint, Plaintiff brings at least nine charges against Defendant:

- Count 1- Racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*;

- Count 2- Sexual discrimination in violation of Title VII;

- Count 3- Age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634;

- Count 4- Discrimination based on disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*;

- Count 5- Retaliation for engaging in protected activity with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII;

- Count 6- Discrimination and creation of a hostile work environment and constructive discharge in violation of Title VII;

- Count 7- Discrimination based on race, sex, age, disability, veteran status,[1] and hostile work environment and constructive discharge in violation of the District of Columbia Human Rights Act ("DCHRA"), DC Code §§ 2-1401 to 2-1411.06;[2]

- Count 8- Failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and

- Count 9- Failure to pay overtime wages in violation of District of Columbia law.

Sec. Am. Compl., ECF No. 21-2, ¶¶ 26-61. Before the Court is Defendant's [22] Motion to Dismiss in which Defendant moves to dismiss each of the counts in Plaintiff's Second Amended Complaint on various grounds relating to improper venue, failure to state a claim for which relief may be granted, and lack of jurisdiction.

Upon consideration of the pleadings[3], the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion:

---

[1] The Court notes that the DCHRA does not appear to protect against discrimination on the basis of "veteran status." DC Code § 2-1401.01 (protecting against discrimination on the basis of "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, status as a victim of intrafamily offense, and place of residence or business"). But, as will be explained later, the Court dismisses Plaintiff's DCHRA claims in their entirely as untimely. Accordingly, the Court need not resolve this issue.

[2] Count 7 of Plaintiff's Second Amended Complaint brings claims under the DCHRA as well as the "District of Columbia Age Discrimination Law." But, the DCHRA protects against discrimination on the basis of age. DC Code § 2-1401.01. And Plaintiff cites the DC Code for only the DCHRA. It is not clear to which law Plaintiff refers when she alleges a claim under the "District of Columbia Age Discrimination Law." Accordingly, the Court will treat Plaintiff's Count 7 claims as arising under only the DCHRA.

[3] The Court's consideration has focused on the following documents:
- Def. Sunovion Pharmaceuticals' Mem. Of Points and Authorities in Support of its Mot. to Dismiss ("Def.'s Mot."), ECF No. 22-1;
- Pl.'s Res. To Def.'s Sec. Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 23; and
- Def. Sunovion Pharmaceuticals' Reply Brief in Support of its Mot. to Dismiss ("Def.'s Reply"), ECF No. 24.

- As to Counts 1, 3, and 4 in Plaintiff's Second Amended Complaint, the Court GRANTS Defendant's motion and DISMISSES Plaintiff's claims for discrimination on the basis of race, age, and disability insofar as they are based on employment decisions and actions occurring prior to January 6, 2016 because those decisions and actions are untimely.

- As to Count 2, the Court DISMISSES Plaintiff's claim for sexual discrimination under Title VII because Plaintiff failed to exhaust that claim before the EEOC.

- As to Count 6, the Court DISMISSES Plaintiff's hostile work environment claim insofar as it relies upon discrimination on the basis of sex as Plaintiff failed to exhaust her sex discrimination claim. Additionally, the Court DISMISSES Plaintiff's claim for constructive discharge as Plaintiff failed to state a claim for which relief may be granted.

- As to Count 7, the Court DISMISSES Plaintiff's DCHRA claims in full because those claims are barred by the DCHRA's statute of limitations.

- As to Counts 8 and 9, the Court DISMISSES Plaintiff's claims for overtime wage violations because Plaintiff failed to state a claim for which relief may be granted.

The Court otherwise DENIES Defendant's Motion to Dismiss.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pled allegations in Plaintiff's Second Amended Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. In the U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Plaintiff Linda Sims is an African American black female veteran who was at least 40 years old during the times relevant to her complaint. Sec. Am. Compl., ECF No 21-2, ¶ 1. From May 2006 to October, 1 2016, Plaintiff worked as a specialty markets salesperson and an institutional salesperson for Defendant Sunovion Pharmaceuticals, Inc. *Id.* As a sales

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

representative, Plaintiff was assigned responsibility for sales and promotions to medical professionals in designated territories including the District of Columbia and Maryland. *Id.* at ¶ 7.

From May 2006 to 2009, Plaintiff alleges that she reached her employment goals and quotas and regularly received ratings of "At Expectations" and "Exceeds Expectations." *Id.* at ¶ 8. However, in 2009, Livia Warden, a white female, became Plaintiff's supervisor. *Id.* at ¶ 9. Plaintiff alleges that Ms. Warden singled out Plaintiff and subjected her to discriminatory and harassing behavior on the basis of her age, sex, race, and veteran status. *Id.* For example, Plaintiff alleges that Ms. Warden refused to approve Plaintiff's requests for overnight lodging when she visited her clients in Maryland even though it was Defendant's policy to approve overnight lodging requests in such circumstances. *Id.* at ¶ 10. Plaintiff also alleges that Ms. Warden attempted to trick her into drinking an alcoholic beverage during a regional meeting in Philadelphia despite the fact that Ms. Warden knew that Plaintiff did not drink alcohol. *Id.* at ¶ 11. Plaintiff further claims that Ms. Warden subtracted valuable locations from Plaintiff's sales territory, giving the locations to younger, non-black male and female representatives who were not meeting their quotas and sales goals. *Id.* at ¶ 12. According to Plaintiff, Ms. Warden's discriminatory and harassing treatment affected Plaintiff's rankings within the company by making it more difficult to meet her quotas and sales goal, resulting in reduced compensation as well as reduced opportunities to win money, trips, and other achievement incentives. *Id.*

In late 2011 or early 2012, Plaintiff alleges that she contacted Sunovion's Human Resources Department to complain of Ms. Warden's disparate and discriminatory treatment. *Id.* at ¶ 13. Plaintiff also alleges that she reported the disparate and discriminatory treatment through Defendant's Ethics and Compliance Division on the electronic office portal. *Id.* But, Plaintiff

alleges that Defendant failed to address her concerns. *Id.* And, Plaintiff further alleges that Ms. Warden continued to discriminate against her in many ways, such as by giving her a performance review of "Partially Meets Expectations." *Id.* at ¶ 14. Plaintiff contends that Ms. Warden's treatment of her and Defendant's failure to address her complaints caused her so much stress, depression, insomnia, and anxiety that she had to go on disability leave from February to April of 2012. *Id.*

Shortly after returning to work in the Spring of 2012, Plaintiff filed an EEOC complaint regarding Ms. Warden's treatment of her. After filing the EEOC complaint, Plaintiff alleges that Ms. Warden was removed as her supervisor and transferred to another section of Sunovion away from Plaintiff and was not allowed to manage in locations where Plaintiff worked. *Id.* at ¶ 15. As Ms. Warden was no longer her supervisor, Plaintiff alleges that she did not further pursue her EEOC complaint. *Id.*

Following Ms. Warden's removal as Plaintiff's supervisor, Plaintiff alleges that she again began to receive good evaluations and incentives for her work performance. *Id.* at ¶ 16. However, in January 2016, Jennifer Russell, a white female, became Plaintiff's supervisor. *Id.* Plaintiff alleges that Ms. Russell was aware of Plaintiff's race, sex, age, veteran status, disability, and EEOC activity. *Id.* Plaintiff further alleges that Ms. Russell had a personal and professional mentoring relationship with Ms. Warden. *Id.*

Plaintiff claims that Ms. Russell immediately began to harass and discriminate against her. *Id.* at ¶ 17. For example, Plaintiff alleges that Ms. Russell wrongfully placed Plaintiff on a Performance Improvement Plan and forced her to create a Developmental Plan. *Id.* Plaintiff further claims that Ms. Russell monitored Plaintiff's work emails and computer usage and even attempted to monitor Plaintiff's off-duty computer activity through social media. *Id.* According

to Plaintiff, Ms. Russell also subtracted valuable locations from Plaintiff's sales territory and gave her customers to other sales representatives. *Id.* Plaintiff further alleges that she was chastised for reaching out to senior-level executives for guidance and mentoring. *Id.* at ¶ 20. Plaintiff contends that other employees not of Plaintiff's protected classes were not treated in these ways. *Id.* at ¶ 17. Plaintiff argues that these discriminatory and retaliatory acts diminished Plaintiff's standing in the company and reduced her chances to win money, trips, and other achievement incentives, adversely affecting her compensation. *Id.*

As an example of Ms. Russell's discriminatory and retaliatory treatment, Plaintiff references a meeting in March 2016 at which Ms. Russell gave meeting participants keys with designs which she said described their personalities. *Id.* at ¶ 18. Ms. Russell gave Plaintiff a pink key with a diamond-like stone with the word "Diva." *Id.* Plaintiff contends that the word "Diva" is often used in a derogatory way to "describe a Black women who is self absorbed and difficult to deal with." *Id.* Plaintiff further contends that Ms. Russell acted in a similarly discriminatory way to the only other black employee at the meeting, disparaging him comparing him to a dancing leprechaun and to a M&M candy. *Id.* Plaintiff contends that Ms. Russell was playing on the "stereotype that Black people like to eat and dance." *Id.*

At a similar meeting a few months later, Plaintiff further alleges that Chuck Rodgers, a white male Head of Sales, introduced a bonus system which affected Plaintiff and the other black employee adversely as compared to the other, non-black employees. *Id.* at ¶ 19. According to Plaintiff, the bonus system adversely affected her rate of pay and opportunities for advancement, compensation, and other incentives. *Id.*

Providing another example, in June 2016,[4] the day before Plaintiff's performance review, Plaintiff alleges that Ms. Russell told her that she was "un-coachable and the worst person she had ever coached in her entire history of coaching." *Id.* at ¶ 21. During that same conversation, Plaintiff alleges that Ms. Russell attempted to get her fired by demanding that Plaintiff check her phone while she was driving a company car. *Id.* The next day, Ms. Russell gave Plaintiff a performance review ranking her as "Partially Meets Performance" and gave Plaintiff a Performance Improvement Plan with 60 days to improve. *Id.* When Plaintiff asked if being at 100% of quota for both of her sales products would bring her into compliance, Plaintiff alleges that Wolfgang Freund, Ms. Russell's supervisor, told her, "No, because I am not going to let my manager work with someone when we don't know where she is coming from." *Id.* According to Plaintiff, this comment served as a constructive discharge because "Mr. Freund was stating that there was nothing that Plaintiff could [do] to come into compliance." *Id.* Plaintiff further alleges that Ms. Russell refused to include Plaintiff's comments or work examples in her Official Performance Review document. *Id.* Plaintiff contends that the fact that she was "singled out to receive a negative evaluation as a result of not being at 100% of quota for two products was evidence of discrimination against Plaintiff based on her sex, race, age and disability, and evidence of retaliation against Plaintiff for engaging in protected EEOC activity." *Id.*

In August 2016, Plaintiff claims that she contacted Defendant's Human Resources Department regarding her Performance Review and other discriminatory and retaliatory treatment. *Id.* at ¶ 22. Plaintiff claims that she attempted to speak with two human resources

---

[4] In her Second Amended Complaint, Plaintiff alleges that this occurrence happened in June 2017. Sec. Am. Compl., ECF No. 21-2, ¶ 21. But, as of October 1, 2016, Plaintiff no longer worked for Defendant. So, this occurrence could not have happened in June 2017. The Court assumes that Plaintiff intended to write June 2016 rather than June 2017.

representatives but that neither addressed her concerns. *Id.* Following her interactions with human resources, Plaintiff "realized that her supervisors were determined to continue to discriminate and retaliate against her and force her to quit her job." *Id.* Additionally, Plaintiff contends that, due to discrimination and retaliation, her stress-related symptoms returned, and her doctor advised her that the resultant stress may lead to a stroke or other health complications. *Id.* On September 19, 2016, Plaintiff submitted her resignation which became effective on October 1, 2016. *Id.*

On November 1, 2016, Plaintiff filed a complaint with the EEOC alleging discrimination and retaliation. And, on August 21, 2017, the EEOC issues Plaintiff notice of her right to sue. *Id.* at ¶ 3. Plaintiff filed this lawsuit against Defendant on November 11, 2017. *See generally* Compl., ECF No. 1.

## II. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Dismissal Under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. U.S. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

### C. Dismissal under Rule 12(b)(3)

When presented with a motion to dismiss for improper venue under Rule 12(b)(3), the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all

reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). In order "[t]o prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue.*" Khalil v. L-3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134, 135 (D.D.C. 2009) (internal quotation marks omitted). Unless there are "pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

### III. DISCUSSION

Plaintiff raises at least nine different claims against Defendant, and Defendant presents at least one grounds for dismissing each of those claims. One of Defendant's arguments for dismissal relates to all of Plaintiff's federal law claims: dismissal for improper venue. Accordingly, the Court will address this argument first. But, finding that venue is proper, the Court will proceed by addressing each of Defendant's grounds for dismissal as they relate to the counts in Plaintiff's Second Amended Complaint.

**A. Dismissal for Improper Venue**

Defendant argues that the Court should dismiss each of Plaintiff's federal law claims on the basis of improper venue. *See* Fed. R. Civ. Pro 12(b)(3). But, the Court concludes that venue is proper under Title VII, the ADA, and the ADEA because Plaintiff has alleged that Defendant's discrimination and retaliation prevented her from working in the District of Columbia and that a substantial part of the events giving rise to her claims occurred in the District of Columbia.

Title VII has a venue provision which displaces the general venue provision for U.S. district courts. The Title VII venue provision is also used to determine proper venue under the ADA. *See Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 285-86 (2002) ("Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII … when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability."). Under Title VII's venue provision, an action may be properly brought (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," or (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). If there is no judicial district which fulfills these requirements "such an action may be brought within the judicial district in which respondent has his principal office." *Id.*

Here, the Court finds that Plaintiff's Title VII and ADA claims were properly brought in the District of Columbia because Plaintiff has alleged that she would have conducted sales and continued to work in the District of Columbia "but for the alleged unlawful employment practice." *Id.* In her Second Amended Complaint, Plaintiff alleged that Defendant "subtracted locations from Plaintiff's territory wherein Plaintiff would excel and thrive, and grant[ed] the customers that Plaintiff had cultivated and capitalized to other sales representatives who were not African American, women, or over 40, who had no veteran status, disability or history of EEOC activity." Sec. Am. Compl., ECF No. 21-2, ¶ 17. Plaintiff specified that "[t]hese customers and clients included but were not limited to doctors who had patients in the District of Columbia." *Id.* Plaintiff also alleged that Defendant "asked other sales representatives whether they wanted

Plaintiff's territory in an attempt to make it more difficult for Plaintiff to reach her quotas. Plaintiff's territory was more valuable than others due to its location which included Washington, DC." *Id.* Further establishing her connection to the District of Columbia, Plaintiff alleged that she "spent more than 50% of her working time with clients in Washington, DC, and the majority of her clients were based" in the District of Columbia. *Id.* at ¶ 4.

Accordingly, Defendant's alleged discrimination and retaliation limited Plaintiff's ability to work in the District of Columbia, which was her principal location of business. *Compare with Equal Emp't Opportunity Comm'n v. Maryflower Transit, Inc.*, No. 93-280, 1993 U.S. Dist. LEXIS 8181, *4 (D.D.C. June 14, 1993) (explaining that the plaintiff had not established venue under the third prong because, absent the alleged discrimination, the plaintiff would have spent only 10% of her time working in the District of Columbia). Drawing all inferences in Plaintiff's favor, the Court finds Plaintiff's allegations sufficient to establish that she would have continued to work and to conduct sales within the District of Columbia but for Defendant's discrimination. Accordingly, venue in the District of Columbia is proper for Plaintiff's Title VII and ADA claims.

Unlike Plaintiff's Title VII and ADA claims, the proper venue for Plaintiff's ADEA claim is governed by the general venue statute. *See Gardner v. Mabus*, 49 F. Supp. 3d 44, 47 (D.D.C. 2014) (citing *In re O'Leska*, No. 00-5339, 2000 WL 1946653, at *1 (D.C. Cir. Dec. 7, 2000)). Under the general venue statute, a civil action may be brought in the judicial district in which (1) "any defendant resides, if all defendants are residents of the State in which the district is located," or (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject to the action is situated," or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial

district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 29 U.S.C. § 1391(b).

For many of the same reasons discussed above, the Court concludes that Plaintiff's ADEA claim is properly brought in the District of Columbia because "a substantial part of the events or omissions" giving rise to Plaintiff's ADEA claim occurred in the District of Columbia. *Id.* Plaintiff alleges that many of her customers were based in the District of Columbia and that her sales territory included the District of Columbia. Plaintiff further alleges that Defendant discriminated against her on the basis of age, in violation of the ADEA, by reassigning many of her customers and her sales territory located within the District of Columbia to other sales representatives. Sec. Am. Compl., ECF No. 21-2, ¶ 17. While not sufficient alone, Plaintiff also claims that she regularly attended programs, meetings, conferences, and special events in the District of Columbia, which supplements Plaintiff's claims regarding the diminution of her customer base and sales territory in the District of Columbia. *Id.* at ¶ 5. In fact, Plaintiff claims that more than 50% of her work time was spent in the District of Columbia. *Id.* at ¶ 4. Drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff has alleged that "a substantial part" of the events or omissions giving rise to her ADEA claim occurred in the District of Columbia. Accordingly, venue is proper in the District of Columbia for Plaintiff's ADEA claim.

Based on the above analysis, the Court DENIES Defendant's motion to dismiss for lack of venue.

### B. Defendant's Various Grounds for Dismissal

Because the court has established that venue is proper in the District of Columbia, the Court will now address Defendant's numerous other grounds for dismissal. The Court will

organize Defendant's arguments by how they relate to each of the counts in Plaintiff's Second Amended Complaint.

### 1. Counts 1, 3, and 4- discrimination on the basis of race under Title VII, age under the ADEA, and disability under the ADA

In Counts 1, 3, and 4, Plaintiff alleges that Defendant discriminated against her on the basis of race under Title VII, on the basis of age under the ADEA, and on the basis of disability under the ADA. Defendant has three arguments as to why this Court should dismiss Plaintiff's discrimination claims. First, Defendant argues that only those incidents of discrimination occurring after January 6, 2016 are timely. Second, Defendant claims that Plaintiff has not alleged an actionable adverse action. Third, Defendant contends that Plaintiff has not alleged sufficient facts to create an inference of discrimination. The Court agrees that only those incidents occurring after January 6, 2016 are actionable, and DISMISSES all claims occurring before that date. But, the Court otherwise DENIES Defendant's grounds for dismissal as to these counts.

First, Defendant argues that Plaintiff's discrimination claims based on acts arising before January 6, 2016 fail because they fall outside the statutory period triggered by filing charges with the EEOC. "Before filing a lawsuit under the ADA, Title VII, or ADEA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice." *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016) (citing 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e-5(e)(1)). If the plaintiff "has first instituted proceedings with a state or local agency, the limitations period is extended to 300 days." *Id.* Discriminatory acts falling outside that window are time-barred even if they relate to acts that were timely filed. *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 113 (2002).

Here, Plaintiff filed a charge of discrimination with the EEOC on November 1, 2016. *See* Ex. 1, ECF No. 21-3, EEOC Record 16. Under the applicable statute of limitation, Plaintiff may base her Title VII, ADEA, and ADA claims only on employment decisions which occurred within 300 days of filing her charge with the EEOC. Accordingly, only those employment decisions occurring on or after January 6, 2016 are actionable. Plaintiff seems to concede this point explaining that "Defendant's actions that occurred before January 2016 are included in the Complaint to illustrate the nature of the relationship between the Defendant and Ms. Sims." Pl.'s Opp'n, ECF No. 23, 9. Accordingly, the Court DISMISSES any claim of discrimination under the Title VII, the ADEA, or the ADA which occurred prior to January 6, 2016.

Second, Defendant argues that the Court should dismiss Plaintiff's Title VII, ADEA, and ADA claims for discrimination because Plaintiff has not alleged an actionable adverse action. In order to establish a claim of disparate-treatment discrimination, a plaintiff must show (1) that she is a member of a protected group, (2) that she suffered an adverse employment action, and (3) that the unfavorable action gives rise to an inference of discrimination. *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008). For purposes of a discrimination claim, "an employee suffers an adverse employment action if [s]he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harms." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). At issue is whether or not Plaintiff has properly alleged an adverse employment action.

Here, Plaintiff alleges that, due to discrimination based on race, age, and disability, she was given a negative performance review, placed on a Performance Improvement Plan, given

reduced opportunities to meet her quotas and to compete for bonuses, given a reduced sales territory and fewer customers, and more. Sec. Am. Compl., ECF No. 21-1, ¶¶ 28, 36, 41. Plaintiff's negative performance review and Performance Improvement Plan alone may have been insufficient to establish the existence of an adverse employment action. *See Mack v. Strauss*, 134 F. Supp. 2d 103, 112-13 (D.D.C. 2001) (explaining that negative performance reviews and placements on performance plans by themselves are not adverse personnel actions). But, here, Plaintiff has connected those actions to reduced opportunities to meet her quotas, reduced opportunities to compete for bonuses, and a material change in employment responsibilities based on a diminished customer base and sales territory. Accordingly, Plaintiff has pled facts sufficient to allege an adverse employment action. *See Walker v. Washington Metro. Area Transit Auth.*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (explaining that a harm constitutes an adverse employment action if there is a tangible change in the plaintiff's duties or working conditions). The Court will not dismiss Plaintiff's discrimination claims on this ground at this time.

Third, Defendant argues that the Court should dismiss Plaintiff's Title VII, ADEA, and ADA claims for discrimination because Plaintiff has not alleged sufficient facts to create an inference of discrimination. But, at the motion to dismiss stage there is a very low bar for alleging an inference of discrimination. *See Harris v. District of Columbia Water and Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (finding the plaintiff's complaint sufficient because it alleged facts that, if shown, would be at least sufficient to state a prime facie claim). Here, Plaintiff has alleged that she was discriminated against based on her race, age, and disability. Additionally, Plaintiff has pointed to allegedly similarly-situated employees not of Plaintiff's protected classes who were treated more favorably than Plaintiff. *See, e.g.*, Sec. Am. Compl.,

ECF No. 21-2, ¶ 21 ("None of the younger non-veteran, non-black male or females without disabilities or EEOC activity were treated this way."); ¶ 20 ("… even though Jamie Camper, a younger non-Black female who had no disability nor EEOC activity, and who had less experience and had not filled her quota for two consecutive years was promoted."). Given the low bar for alleging an inference of discrimination at the motion-to-dismiss stage, the Court will not dismiss Plaintiff's discrimination claims on this ground at this time. *See Harris*, 791 F.3d at 70. But, the Court expresses no opinion as to whether or not Plaintiff will ultimately be able to prove that Defendant discriminated against her on the basis of race, age, and disability.

To summarize, the Court DISMISSES Plaintiff's Title VII, ADEA, and ADA claims of discrimination insofar as they are based on employment decisions and actions occurring before January 6, 2016. But, Defendant's motion to dismiss Counts 1, 3, and 4 is otherwise DENIED.

### 2. Count 2- discrimination on the basis of sex under Title VII

The Court next addresses Count 2 of Plaintiff's Second Amended Complaint in which Plaintiff alleges discrimination on the basis of sex under Title VII. Defendant argues that the Court should dismiss Plaintiff's Title VII sex discrimination claim for a failure to exhaust. "Before filing a lawsuit under … Title VII … a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Cooper*, 174 F. Supp. 3d at 202. Lawsuits brought under Title VII are predicated upon an EEOC charge and are limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted). Here, Plaintiff failed to state sex discrimination as a basis for her EEOC charge; accordingly, the Court DISMISSES her claim of sex discrimination.

In her EEOC charge of discrimination, Plaintiff checked the boxes for discrimination based on race, color, retaliation, age, and disability. She did not check the box for discrimination based on sex. Ex. 3, ECF No. 22-4.[5] Perhaps Plaintiff's omission in failing to check the sex discrimination box could have been remedied if she had mentioned sex discrimination in the text of her charge form. *See Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 13 (D.D.C. 2008) (considering a plaintiff's written explanation when the plaintiff failed to check the "retaliation" box in his EEOC charge), *aff'd*, 417 Fed. App'x 4 (D.C. Cir. 2011). But, in explaining her charge of discrimination, Plaintiff stated only that "I believe I was discriminated against … based on my race (Black), color, age (49), disabilities, and in retaliation for engaging in protected activity." *Id.* Nowhere, either in the checked boxes or in the written explanation, did Plaintiff allege that she had been discriminated against on the basis of sex.

Despite the fact that sex discrimination is not indicated on Plaintiff's EEOC charge, Plaintiff argues that she did exhaust her sex discrimination claim because a review of Plaintiff's entire 94-page EEOC file will show that Plaintiff alleged discrimination on the basis of sex. Pl.'s Opp'n, ECF No. 23, 8. Out of her entire 94-page EEOC file, Plaintiff references only one mention of sex discrimination. *See* Pl.'s Opp'n, ECF No. 23, 8. On page 8 of her EEOC file, Plaintiff's sex of female was noted. EEOC Record, ECF No. 17-1, 8. But, no allegations of sex discrimination appear. Instead, the cited page focuses on Plaintiff's claim of race and color

---

[5] On a motion to dismiss, the Court can consider Plaintiff's EEOC charge without converting Defendant's motion to one for summary judgment. *See Baird v. Snowbarger*, 744 F. Supp. 2d 279, 287 n.2 (D.D.C. 2010), *aff'd in relevant part, vacated in part, Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011) ("The Court notes that exhibits, such as the EEOC documents attached to defendant's motion, may be considered in deciding the motion to dismiss because matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case … may be considered by the district court without converting the motion into one for summary judgment." (internal quotation marks omitted)).

discrimination. *Id.* (Plaintiff "contends that her non-Black co-workers were not subjected to the same treatment."). The Court concludes that this single mention of sex could not reasonably have been expected upon investigation to lead to a sex discrimination claim. Accordingly, Plaintiff's citation to a single mention of sex in her 94-page EEOC file does not remedy her failure to allege sex discrimination in her EEOC charge. *See, e.g., Ahuja v. Detica, Inc.*, 873 F. Supp. 2d 221, 228 (D.D.C. 2012) (refusing to look to an intake questionnaire to determine if the plaintiff had exhausted a discrimination claim); *Park*, 71 F.3d at 908-09 (rejecting the plaintiff's attempt to rely on the contents of an intake questionnaire to expand the substantive scope of the plaintiff's EECO charge).

Plaintiff's EEOC charge does not allege discrimination on the basis of sex, and Plaintiff's allegations of sex discrimination are not like or reasonably related to her other charges of discrimination. Accordingly, Plaintiff failed to exhaust her claim of sex discrimination under Title VII, so this claim is DISMISSED. To allow Plaintiff to bring this claim would subvert the purpose behind the exhaustion requirement: providing employers with fair notice and an opportunity to resolve issues absent court intervention. *See Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).[6]

---

[6] The Court notes that Plaintiff failed to fully respond to this argument in her Opposition. Instead, Plaintiff gave a summary response and noted that "this argument has been previously presented, and Plaintiff has responded." Pl.'s Opp'n, ECF No. 23, 8. Plaintiff is referring to her previous Opposition to Defendant's Motion to Dismiss her original Complaint. *See* Pl.'s Opp'n to Defense Mot. to Dismiss, ECF No. 12. Plaintiff referred to her previous Opposition in this way numerous times throughout her brief.

But, the Court granted in part and held in abeyance Defendant's Motion to Dismiss Plaintiff's Original Complaint. June 4, 2018 Order, ECF No. 14. And, as it has been amended, Plaintiff's original Complaint is no longer a legally operative document. By repeatedly referring to her previous Opposition, which defends a Complaint that is no longer legally operative, Plaintiff's arguments are often convoluted and confusing. Despite this shortcoming, the Court considered Plaintiff's arguments in her previous Opposition when Plaintiff referenced the document.

### 3. Count 5- retaliation under Title VII

Next, Defendant moves to dismiss Plaintiff's Count 5 claim of retaliation for engaging in protected activity in violation of Title VII. Plaintiff alleges that Defendant retaliated against her due to her prior EEOC complaint concerning the alleged discriminatory actions of Ms. Warden. Defendant moves to dismiss this count, arguing that Plaintiff has failed to allege a materially adverse action taken in response to protected activity. The Court DENIES Defendant's motion as to this count, finding that Plaintiff's allegations are sufficient to survive a motion to dismiss.

"[T]o sustain a retaliation claim, the employee need only demonstrate that the employer's challenged action would have been material to a reasonable employee, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Coleman v. Duke*, 867 F.3d 204, 215 (D.C. Cir. 2017) (internal quotation marks and alterations omitted). To "be materially adverse, the employer's action must be more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Typically, a materially adverse action in the workplace involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Id.* (internal quotation marks omitted).

Here, Plaintiff alleges that Defendant retaliated against her for her prior protected EEOC activity by giving her a negative performance review, placing her on a Performance Improvement Plan, reducing her opportunities to meet her quotas and to compete for bonuses, minimizing her sales territory, reassigning her customers to other sales representatives, and more. Sec. Am. Compl., ECF No. 21-2, ¶ 45. Plaintiff contends that as a result of this retaliation

she "suffered a loss of earnings, earning capacity, and fringe benefits" as well as a loss of professional reputation. *Id.* at ¶ 46.

The Court concludes that Plaintiff has sufficiently alleged the existence of a materially adverse action. While minor reassignments of responsibilities may not constitute a materially adverse action, when those changes are accompanied by tangible harms, such as a reduction in pay or privileges of employment, they may be considered materially adverse. *See Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002) ("D.C. Circuit has held that minor changes in work-related duties or opportunities do not constitute an actionable injury unless they are accompanied by some other adverse change in the terms, conditions or privileges of employment."). Here, Plaintiff claims that Defendant's allegedly retaliatory actions resulted in a reduction in her earnings, her capacity for earnings, and her benefits. Accordingly, the Court concludes that Plaintiff has alleged a materially adverse employment action.

The Court also concludes that Plaintiff has alleged a "causal link" between the materially adverse employment action and her participation in protected EEOC activity. While the temporal connection between Plaintiff's 2012 EEOC complaint and the retaliatory acts occurring in 2016 may be remote, Plaintiff has alleged more than temporal proximity. Plaintiff alleges that Ms. Russell had a personal and professional mentoring relationship with Ms. Warden, the centerpiece of Plaintiff's original EEOC complaint. Based on this mentoring relationship, Plaintiff alleges that Ms. Russell retaliated against Plaintiff so that Ms. Warden might be permitted to move back into a supervisory position in the District of Columbia area. Sec. Am. Compl., ECF No. 21-2, ¶ 45. The Court expresses no opinion as to whether or not Plaintiff will ultimately be able to prove this causal connection, but her allegations are sufficient to survive a motion to dismiss.

Accordingly, the Court will not dismiss Plaintiff's Title VII retaliation claim on this ground at the motion-to-dismiss stage. Defendant's motion to dismiss this count is DENIED.

### 4. Count 6- hostile work environment and constructive discharge under Title VII

Defendant also moves to dismiss Count 6 of Plaintiff's Second Amended Complaint. In Count 6, Plaintiff alleges that she was subject to a hostile work environment under Title VII as well as constructive discharge under Title VII. Defendant has three grounds for the dismissal of this claim. First, Defendant contends that Plaintiff cannot bring a hostile work environment claim for discrimination on the basis of sex because she did not exhaust that claim through her EEOC charge. Second, Defendant argues that Plaintiff failed to state a claim for hostile work environment. Third, Defendant contends that Plaintiff failed to state a claim for constructive discharge. The Court agrees in part with Defendant and DISMISSES both Plaintiff's hostile work environment claim insofar as it is predicated on sex discrimination and Plaintiff's claim of constructive discharge. The Court otherwise DENIES Defendant's motion to dismiss this count.

First, Defendant argues that Plaintiff cannot bring a hostile work environment claim on account of sex because she has not exhausted that claim. As was previously explained, Plaintiff failed to allege discrimination on the basis of sex in her EEOC charge. Ex. 3, ECF No. 22-4. For the same reasons that failure to exhaust prevented Plaintiff from brining a discrimination claim on the basis of sex, failure to exhaust also prevents Plaintiff from brining a hostile work environment claim on the basis of sex. *See Supra* Sec. III.B(2). Accordingly, insofar as Plaintiff's Title VII hostile work environment claim is based on sex discrimination, the claim is DISMISSED.

Second, Defendant argues that Plaintiff failed to state a claim for hostile work environment. In order to state a claim for hostile work environment, Defendant's discriminatory

actions must be sufficiently severe or pervasive as to "alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (internal quotation marks omitted). Defendant contends that Plaintiff's allegations concern the "ordinary tribulations of the workplace" and are insufficient as a matter of law to establish a hostile work environment. *See Holmes-Martin v. Sebelius*, 693 F. Supp. 2d 141, 166 (D.D.C. 2010) (internal quotation marks omitted).

Plaintiff alleges that she faced a hostile work environment based on repeated disparate, negative, and harassing treatment. Sec. Am. Compl., ECF no. 21-2, ¶ 49. Plaintiff provides specific examples of such treatment including negative performance reviews, placement on a Performance Improvement Plan, reductions in opportunities to meet her quotas and to compete for bonuses, an inability to engage in mentoring relationships, and reductions in her valuable sales territory and customer base. *Id.* Plaintiff contends that these actions were "so pervasive, intimidating and intolerable that they interfered with Plaintiff's compensation, ability to do her job, and opportunities for progress and promotion, and her health." *Id.*

The Court concludes that "a motion to dismiss is not the appropriate vehicle for evaluating the character or consequences of the acts alleged to create a hostile work environment." *Terveer v. Billington*, 34 F. Supp. 3d 100, 121 (D.D.C. 2014) (quoting *Perry v. Snowbarger*, 590 F. Supp. 2d 90, 92 (D.D.C. 2008)). Because Plaintiff has alleged some conduct in support of her claim, such as disparaging treatment by management and reductions to her work responsibilities, the facts in Plaintiff's Second Amended Complaint "support her hostile work environment claim." *See Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying the defendant's motion to dismiss the plaintiff's hostile work environment claim because the plaintiff had alleged some conduct in support of her claim in addition to alleging

overall negative treatment in the workplace). Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's Title VII hostile work environment claim.[7]

Third, Defendant contends that Plaintiff has failed to state a claim for constructive discharge. Plaintiff counters that "she has sufficiently pled facts to support her claim of constructive discharge under Title 7." Pl.'s Opp'n, ECF No. 23, 11. "[C]onstructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign." *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 766 (D.C. Cir. 1997) (internal quotation marks omitted). "A finding of constructive discharge requires a finding of intentional discrimination plus a finding of aggravating factors that suggest that the complainant was driven to quit." *Bishopp v. District of Columbia*, 788 F.2d 781, 790 (D.C. Cir. 1986) (internal quotation marks omitted). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Penn State Police v. Sunders*, 542 U.S. 129, 141 (2004).

Here, Plaintiff has not pled sufficient facts to meet the objective standard of "intolerable." *Id.* Essentially, Plaintiff alleges the same facts to establish her constructive discharge claim as

---

[7] It is not clear to the Court whether or not Defendant challenges Plaintiff's ability to use incidents occurring before January 6, 2016 in support of her hostile work environment claim. *See Supra* Sec. III.B(1). But, the Court notes that while "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period- 180 or 300 days- … [a] charge alleging a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Here, the Court finds that Plaintiff's allegations relating Ms. Warden's supervision from 2009-2012 are not time barred because they involved the same type of employment actions as, and were perpetrated by a supervisor directly connected to, Plaintiff's non-time barred allegations. *Id.* at 120-21; *see also Baird v. Gotbaum*, 662 f.3d 1246, 1251 (D.C. Cir. 2011). Accordingly, while those claims are dismissed as time barred for Plaintiff's discrimination and retaliation claims, Plaintiff has alleged a pattern of treatment sufficient for those claims to survive Defendant's motion to dismiss Plaintiff's hostile work environment charge.

she alleges to establish her hostile work environment claim. But, more is required. *See Robinson v. Ergo Solutions, LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (explaining that the showing for constructive discharge requires something more than "a hostile work environment claim alone"); *see also Huang v. Wheeler*, 215 F. Supp. 3d 100, 113 (D.D.C. 2016) (explaining that constructive discharge requires more support than "a hostile-work-environment claim so that the plaintiff's resignation qualifies as a fitting response to the discrimination"). The only additional fact alleged in Plaintiff's Second Amended Complaint relating to constructive discharge is the comment made by Mr. Freund in response to Plaintiff's question about whether being at 100% of her quota for both of her products would bring her into compliance. In response Mr. Freund said, "No, because I am not going to let my manager work with someone when we don't know where she is coming from." Sec. Am. Compl., ECF No. 21-2, ¶ 21. That comment, taken together with Plaintiff's other allegations, does not constitute the kind of "extreme mistreatment or thinly veiled (or even overt) threats of termination" which this circuit has required for constructive discharge. *Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 78 (D.D.C. 2006). Likewise, a change in sales territories and customers, negative performance reviews, implementation of a Performance Improvement Plan, and stress from working with a critical supervisor are not the sort of "aggravating factors" necessary to support a constructive discharge claim. *See Veitch v. England*, 471 F.3d 124, 131 (D.C. Cir. 2006). Accordingly, the Court DISMISSES Plaintiff's claim for constructive discharge.

To summarize, the Court DISMISSES Plaintiff's Title VII hostile work environment claim insofar as it is predicated on sex discrimination as that claim is unexhausted. The Court also DISMISSES Plaintiff's Title VII claim for constructive discharge as Plaintiff has not alleged

sufficient facts to state a claim for constructive discharge. But, Defendant's motion to dismiss relating to Count 6 is otherwise DENIED.

### 5. Count 7- discrimination, hostile work environment, and constructive discharge under the DCHRA

Next, Defendant moves to dismiss Count 7 of Plaintiff's Second Amended Complaint which states discrimination, hostile work environment, and constructive discharge claims under the DCHRA. Defendant has two arguments as to why the Court should dismiss all of Plaintiff's DCHRA claims. First, Defendant contends that the Court does not have subject matter jurisdiction over Plaintiff's DCHRA claims. Second, Defendant contends that Plaintiff's DCHRA claims are barred by the statute of limitations. The Court concludes that Plaintiff's DCHRA claims are barred by the statute of limitations and DISMISSES Plaintiff's DCHRA claims.

First, Defendant argues that Plaintiff's claims under the DCHRA should be dismissed for lack of subject matter jurisdiction. "[T]he most important factor in determining whether a court has subject matter jurisdiction over a claim filed pursuant to the DCHRA" is the location of the discrimination. *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 20 (D.D.C. 2003). In order have subject matter jurisdiction over DCHRA claims, the discriminatory decision must have been made, or its effects must have been felt, or both must have occurred, in the District of Columbia. *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301, 304-305 (D.C. 2009).

Here, the Court concludes that it has subject matter jurisdiction over Plaintiff's DCHRA claims because the effects of Plaintiff's alleged discrimination were felt in the District of Columbia. As the Court previously discussed, Plaintiff alleges that, due to Defendant's discriminatory actions, Plaintiff's sales territory, which had included the District of Columbia, was reduced. *See Supra* Sec. III.A; Sec. Am. Compl., ECF No. 21-2, ¶ 17. Plaintiff further

alleges that Defendant reassigned many of her sales customers in the District of Columbia to other sales representatives. *Id.* Additionally, Plaintiff claims that she "spent more than 50% of her working time with clients in Washington, DC, and the majority of her clients were based in Washington, DC." Sec. Am. Compl., ECF No. 21-2, ¶ 4. Accordingly, the Court finds that the effects of Defendant's alleged discrimination were felt in the District of Columbia. *See Green v. Kinney Shoe Corp.,* 704 F. Supp. 259, 260 (D.D.C. 1988) (allowing a claim under the DCHRA where the plaintiffs were denied jobs within the District of Columbia even though the decisions were made in Maryland). Accordingly, the Court has subject matter jurisdiction over Plaintiff's DCHRA claims.

Second, Defendant contends that Plaintiff's claims under the DCHRA should be dismissed because they are barred by the DCHRA's statute of limitations. Pursuant to the DCHRA, "[a] private cause of action [under the statute] shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act." D.C. Code. § 2-1403.16(a). But, this one-year limitation may be tolled by "[t]he timely filing of a complaint with the [District of Columbia Office of Human Rights], or under the administrative procedures established by the Mayor pursuant to § 2-1403.03." *Id.*

Plaintiff filed this lawsuit on November 21, 2017. *See generally* Compl., ECF No. 1. Accordingly, to be timely, the alleged unlawful acts must have occurred on or after November 21, 2016. But, Plaintiff sets forth no discriminatory act that occurred on or after November 21, 2016 as her resignation was effective prior to that date.

Despite filing suit over a year after the alleged discriminatory acts took place, Plaintiff argues that her DCHRA claims are timely. Plaintiff contends that her charge of discrimination with Maryland's EEOC office on November 1, 2016 tolled the DCHRA's statute of limitations.

*See Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 83 (D.D.C. 2014) (allowing tolling under the DCHRA for the duration of the plaintiff's administrative complaint). Because the statute of limitations was tolled during the pendency of her administrative complaint, Plaintiff argues that her DCHRA claims are timely.

The Court concludes that Plaintiff's administrative complaint failed to toll the DCHRA's statute of limitations because Plaintiff filed her administrative complaint with Maryland's EEOC office, not with the District of Columbia's EEOC office. Ex. 3, ECF No. 22-4 (charge of discrimination with Maryland' EEOC). Filing an administrative complaint with the District of Columbia's EEOC office tolls the DCHRA's statute of limitations because "[w]hen a charge of discrimination is filed with the EEOC in the District of Columbia, a claim is automatically cross-filed with the D.C. Office of Human Rights [] pursuant to a 'worksharing agreement' between the two agencies," *Ellis v. Georgetown Univ. Hosp.*, 631 F.Supp.2d 71, 78 (D.D.C. 2009) (citing 29 C.F.R. § 1601.13(a)(4)(ii)(A)). But, Maryland's EEOC office did not cross-file Plaintiff's charge of discrimination with the District of Columbia Office of Human Rights. *See* Ex. 3, ECF No. 22-4 (showing cross-filing with Maryland's Office of Human Rights). Accordingly, her DCHRA claims were not tolled.

The Court notes that this case is not like *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365 (D.C. Cir. 2008). In that case, The United States Court of Appeals for the District of Columbia Circuit decided that filing a charge of discrimination with the EEOC's New York district office was sufficient to toll the plaintiff's ADEA claim. 514 F.3d at 1372-74. But, *Schuler* involved a claim under the ADEA, not the DCHRA. As is relevant here, the ADEA required only that the plaintiff file his charge with a state agency authorized to "'grant or seek relief from [the alleged] discriminatory practices.'" *Id.* at 1371 (quoting 29 U.S.C. § 633(b)).

But, importantly, unlike the ADEA, the DCHRA specifically requires that a claim be received by the District of Columbia Office of Human Rights in order to toll the statute of limitations. DC Code. § 2-1403.16(a). Moreover, in *Schuler*, the plaintiff explicitly told the EEOC that his complaint should be cross-filed with the District of Columbia Office of Human Rights. 514 F.3d at 1374. In this case, Plaintiff did not request that her claim be cross-filed with the District of Columbia Office of Human Rights, and there is evidence that it was cross-filed with only the Maryland Office of Human Rights. Ex. 3, ECF No. 22-4. Accordingly, *Schuler* does not save Plaintiff's DCHRA claims from being barred by the statute of limitations.

The DCHRA's statute of limitations is tolled only if a plaintiff files a complaint with "the Office." D.C. Code. § 2-1403.16(a). "[T]he Office" refers to the District of Columbia Office of Human Rights. Accordingly, filing a complaint with the EEOC is not sufficient to toll the DCHRA's statute of limitations. That complaint must be received by the District of Columbia Office of Human Rights. Here, Plaintiff's complaint was received by Maryland's Office of Human Rights, not by the District of Columbia's Office. Accordingly, the Court concludes that the DCHRA's statute of limitations was not tolled and Plaintiff's claims under the DCHRA are not timely. *See Frett*, 24 F. Supp. 3d at 83 ("Bringing claims to the [District of Columbia Office of Human Rights] tolls the one-year statute of limitations for bringing those claims to a court, … and [w]hen a charge of discrimination is filed with the EEOC in the District of Columbia, a claim is automatically cross-filed with the [District of Columbia Office of Human Rights] pursuant to a 'work-sharing agreement' between the two agencies." (internal citations and quotation marks omitted)). Plaintiff's claims under the DCHRA are DISMISSED as barred by the statute of limitations.

### 6. Counts 8 and 9- overtime wage violations under the FLSA and District of Columbia law

Finally, in Counts 8 and 9 of her Second Amended Complaint, Plaintiff alleges that Defendant failed to pay overtime wages in violation of the FLSA and in violation of "District of Columbia Law." Sec. Am. Compl., ECF No. 21-2, ¶¶ 52-61. While Plaintiff does not cite a particular District of Columbia law pertaining to overtime wages, the Court assumes that Plaintiff is referring to the District of Columbia Minimum Wage Act which, like the FLSA, provides that no employer shall employ an employee for longer than 40 hours a week unless the employee receives additional compensation for that work. D.C. Code § 32-1003(c); 29 U.S.C. § 207(a)(1). Defendant has two grounds for dismissing Counts 8 and 9 of Plaintiff's Second Amended Complaint. Considering Defendant's arguments, the Court concludes that Plaintiff has failed to state a claim for which relief may be granted and DISMISSES Counts 8 and 9.[8]

First, Defendant contends that Plaintiff failed to state a claim for failure to pay overtime wages. In her Second Amended Complaint, Plaintiff alleges that her "work week routinely exceeded more than 40 hours per week during the 10 years that she worked for the Defendant, and she routinely worked 50 to 60 hours during the week in her job, however, Defendant willfully failed to pay her overtime wages despite the fact that she was legally entitled to collect them." Sec. Am. Compl., ECF No. 21-2, ¶¶ 57, 60. But, nowhere in her complaint does Plaintiff provide factual allegations relating to this bare assertion. The only facts even tangentially related to Plaintiff's overtime claims involve allegations that from 2009-2012 her supervisor refused to approve overnight lodging requests causing Plaintiff to work overtime. *Id.* at ¶ 10.

---

[8]   Defendant also argues that the Court lacks subject matter jurisdiction to address Plaintiff's District of Columbia law claim. As the Court has already explained, the Court has jurisdiction over Plaintiff's District of Columbia law claim because Defendant's alleged actions against Defendant had an effect in the District of Columbia. *See Supra* Sec. III.B(5).

FLSA claims must be brought within two years, or at most three years if the employer's violation was willful. 29 U.S.C. § 255(a). Similarly, under the District of Columbia Minimum Wage Act, all claims must be brought within three years. D.C. Code § 32-1308(c)(1). Based on these statutes of limitations, Plaintiff's factual allegations relating to Defendant's conduct from 2009-2012 are not timely. And, Plaintiff provides no timely factual allegations related to overtime work. Accordingly, Plaintiff has provided no factual support for her overtime wage claims. The Court DISMISSES Counts 8 and 9 of Plaintiff's Second Amended Complaint for failure to state a claim. *See Twombly*, 550 U.S. at 557 (explaining that naked assertions devoid of factual enhancement need not be accepted as true at the motion-to-dismiss stage).

But, even if Plaintiff had provided factual support for Counts 8 and 9, the Court would still dismiss Plaintiff's overtime wage claims. Under the FLSA, individuals working in a bona fide outside sales position are exempt from overtime wage requirements. 29 U.S.C. § 213(a)(1). And, the District of Columbia has adopted exemptions similar to those under the FLSA. *See Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011) (explaining that "[w]ith respect to employers' liability, [the District of Columbia Minimum Wage Act is] construed consistently with the FLSA"). In her Second Amended Complaint, Plaintiff alleges that she worked in an outside sales capacity as a sales representative. Sec. Am. Compl., ECF No. 21-2, ¶ 6. Accordingly, Plaintiff is exempt from overtime wage requirements under the FLSA and District of Columbia law.

Plaintiff does not dispute Defendant's contention that Plaintiff is exempt from overtime wage requirements, stating only, "[w]ith regard to the FLSA claims, Plaintiff submits generally." Pl.'s Opp'n, ECF No. 23, 15. Finding support for Defendant's argument, and lacking any rebuttal from Plaintiff, the Court concludes that, as an outside sales representative, Plaintiff was exempt

from overtime wage requirements under the FLSA and the District of Columbia Minimum Wage Act. Accordingly, even if she had provided factual support, Plaintiff's overtime wage claims would be DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's [22] Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

Defendant's Motion is GRANTED in that Plaintiff's:

- Counts 1, 3, and 4 claims of race, age, and disability discrimination are DISMISSED insofar as they are based on employment decisions and actions occurring prior to January 6, 2016 because those decisions and actions are untimely;

- Count 2 claim of sex discrimination is DISMISSED for failure to exhaust;

- Count 6 hostile work environment claim is DISMISSED insofar as it relies upon discrimination on the basis of sex as that claim is unexhausted, and Plaintiff's Count 6 constructive discharge claim is DISMISSED because Plaintiff failed to state a claim for which relief may be granted;

- Count 7 DCHRA claims for discrimination, hostile work environment, and constructive discharge are DISMISSED as barred by the statute of limitations; and

- Counts 8 and 9 claims for overtime wage violations are DISMISSED for failure to state a claim for which relief may be granted.

Defendant's Motion to Dismiss is otherwise DENIED. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge